**United States District Court**
**District of Massachusetts**

———————————————————— )
                                             )
JUDITH McMULLEN                              )
          Appellant,                         )
                                             )
          v.                                 )        **Bankruptcy Appeal No.**
                                             )        **09-11205-NMG**
GORDON N. SCHULTZ,                           )
          Appellee.                          )
———————————————————— )


**MEMORANDUM & ORDER**

**GORTON, J.**

In this bankruptcy appeal, the appellant-debtor appeals an award of attorneys fees entered by the bankruptcy court. The appellee, an attorney appearing <u>pro se</u>, has moved for attorneys' fees and costs incurred as a result of this appeal.


**I.   Background**

**A.   Factual Background**

The factual and procedural background of this case, which commenced almost a decade ago, is long and complex. To the extent possible, the Court will confine its discussion to those facts relevant to the resolution of the instant appeal.[1]

---

[1] Most of the factual background provided below is adopted from Judge Hillman's numerous Memoranda of Decision in the <u>In Re McMullen</u> bankruptcy proceedings. For a complete recitation of the facts, <u>see</u> <u>In Re McMullen</u>, No. 00-10151-WCH, 2009 WL 53026 (Bankr. D. Mass. Feb 18, 2009) ("<u>McMullen II</u>") and <u>In Re</u>

The Debtor (and now appellant), Judith McMullen ("McMullen" or "the Debtor"), is a licensed real estate broker.  She filed a voluntary Chapter 7 bankruptcy petition in January, 2000.  The case was assigned to United States Bankruptcy Judge William C. Hillman of the District of Massachusetts, Eastern Division.  At the time the Debtor initiated the proceedings, she owned a fully-rented, two-family residence as an investment property ("the Investment Property") and a single-family residence ("the Single Family Home"), both in New Bedford, Massachusetts.  The Debtor's mortgages on both of the properties were in default, the Investment Property was in foreclosure and the Single Family Home had already been foreclosed upon.  There were also legal issues concerning the propriety of the default and the deficiency judgment being pursued in conjunction with the foreclosure of the Single Family Home.

In April, 2000, the Debtor retained attorney Gordon Schultz ("Att'y Schultz") to convert her case from a Chapter 7 to a Chapter 13 proceeding.  According to the Statement filed by Att'y Schultz in April, 2000, pursuant to Bankruptcy Rule 2016(b) ("the Rule 2016(b) Statement"), the Debtor's parents, Addison and

---

McMullen, No. 00-10150-WCH, 2009 WL 1490581 (Bankr. D. Mass. May 27, 2009) ("McMullen III").

Louise Russell (collectively, "the Russells"), agreed to pay Schultz's fees and costs on the Debtor's behalf.[2]

Due to the Debtor's involvement in numerous real estate transactions, the claims resolution process was long and convoluted.  The most contentious portion of the litigation involved a series of claims and counterclaims arising from the Debtor's purchase and financing of the two properties in New Bedford from Curtis Perry, then a Chapter 7 Debtor himself, and his associates Isabel Perry, the trustee of Casa Sol Trust, the Perry family's trust, and Curtis Mello ("Mello") ("the McMullen/Perry Claim Litigation").

In 2001, the Debtor and Deborah Casey, the Chapter 7 Trustee of Curtis Perry's estate, entered into a settlement agreement ("the McMullen Claim Settlement") resolving the Debtor's claim against Curtis Perry's estate and the Chapter 7 Trustee's claim against the Debtor's estate.  The McMullen Claim Settlement provided that the Debtor's non-priority claim against Curtis Perry in the amount of $150,000 ("the Cash Allowed Claim") would be allowed and that the Chapter 7 Trustee would assign to the Debtor certain rights with respect to the notes and mortgages of

---

[2] Fed. R. Bankr. P. 2016(a) requires that an attorney seeking compensation for services file an application describing the services rendered, time expended and expenses incurred.  The application must include, <u>inter alia</u>, a statement detailing 1) the payments that have been made or promised to the attorney for services rendered in connection with the case and 2) the source of that compensation.

both the Investment Property and the Single Family Home ("the Non-Cash Allowed Claim").

Due to a settlement between Curtis Perry and the Chapter 7 Trustee in April, 2003, the Debtor was forced to pursue the McMullen/Perry Claim Litigation against Casa Sol Trust and Mello.  As such, the Debtor did not realize the Non-Cash Allowed Claim until August, 2008, when the remaining parties reached a settlement agreement.  Under the terms of that agreement ("the Perry/Mello Settlement"), McMullen 1) retained title to the Investment Property free of any mortgage, and 2) obtained an unconditional release of the deficiency judgment claim arising from the foreclosure of the Single Family Home.  Although McMullen was involved in several other relevant actions, the only other recovery she received was as a result of a settlement of $137,500 in a state court action against John Vlahos for unpaid real estate commissions ("the Vlahos Settlement").

**B.   Procedural History**

Att'y Schultz filed several interim fee applications seeking compensation for his representation of the Debtor.  The first ("First Fee Application") was filed in June, 2003, and sought $131,080 in compensation and $3,450 for expenses incurred up to that date.  Rather than seeking compensation from the Russells (as stipulated in the Rule 2016(b) Statement), Schultz requested that his fees be paid from the $150,000 cash allowance

that McMullen had received as part of the McMullen Claim
Settlement.  In July, 2003, both the Chapter 7 Trustee and Isabel
Perry filed objections to the First Fee Application, asserting
that Schultz was not entitled to compensation from property of
the Debtor's estate because the Rule 2016(b) Statement and fee
agreement attached to the First Fee Application both stated that
the Russells would be solely responsible for Schultz's fees.  The
Trustee also objected to the reasonableness of various charges.

Att'y Schultz responded that the First Fee Application
incorporated an amendment to the original fee agreement ("the
Amendment") which made the Debtor responsible for counsel fees
and costs.  The Debtor submitted an affidavit ("the Affidavit")
in support of the First Fee Application, stating that she
assented to payment of the fees from the Cash Allowed Claims and
that she agreed to be the primary obligor of her attorneys'
fees.

After a hearing in August, 2003, Bankruptcy Judge Hillman
took the First Fee Application under advisement and began a
lengthy review of the fees requested.  In October of that year,
the Trustee and Schultz filed a stipulation providing that
Schultz would credit approximately $5,500 against the fee portion
of the First Fee Application in consideration of the Trustee's
withdrawal of her objection.

-5-

Then, on March 4, 2004, the Debtor, acting <u>pro</u> <u>se</u>, filed
with the Court a lengthy letter requesting an investigation of
the case in light of the substantial fees sought by Schultz and
what she considered to be the "underwhelming" results achieved to
that point.  She also noted that her father had given Schultz a
mortgage on his home when Schultz had demanded an $80,000
increase in his retainer and claimed that she signed the
Affidavit (in support of the fee application) under the
misconception that Schultz would release her parents from their
obligation to pay Schultz's fees, which he allegedly refused to
do.  Finally, the Debtor alleged that Schultz had forced her to
agree to the McMullen Claim Settlement (under which she became
entitled to only a small portion of the asserted claim) by
threatening to withdraw his representation if she did not accept
the terms of the settlement.

Shortly thereafter, Schultz filed a second fee application
("the Second Fee Application") requesting $131,040 in
compensation for services rendered in the Vlahos Litigation and
reimbursement of $2,490 for expenses.  Isabel Perry objected to
that application as well, questioning the reasonableness of the
fees (which amounted to 97% of the recovery the Debtor had
obtained in Vlahos Settlement).

In August, 2004, Bankruptcy Judge Hillman issued a
Memorandum of Decision in which he considered both the First and

Second Fee Applications.  See McMullen I, No. 00-10151-WCH
(Bankr. D. Mass. Aug. 19, 2004).  In that decision, Judge Hillman
concluded that the Amendment and Affidavit effectively amended
the Rule 2016(b) Statement, although he noted his "patent
apprehension" about the Amendment's effect on the Russells'
obligation to pay Schultz's fees and expenses.  He also opined
that the record in the case did not reflect that the services
rendered had ultimately benefitted the estate but simultaneously
awarded the Second Fee Application in full ($133,530) and $75,000
in compensation for the First Fee Application (approximately 55%
of the $134,530 that Schultz had originally requested).  Judge
Hillman expressly noted that the awards were not, however, final
and were subject to further review at the completion of the case
and, if necessary, partial or complete disgorgement.  Despite
Judge Hillman's described concern about the effect of the
Amendment, Att'y Schultz took no action to correct the record or
otherwise clarify his prior disclosures.

The issue of Schultz's fees was not revisited again until
July, 2008, when Schultz filed his Final Fee Application.  By
that time, the relationship between Schultz and the Debtor had
become acrimonious due, in large part, to the interim fees
awarded in McMullen I.  In the Final Fee Application, Schultz
requested $116,586 in compensation and reimbursement of expenses
in the amount of $10,125, in addition to the fees and expenses

from the First Fee Application that were not previously awarded
in McMullen I.

In July, 2008, the Debtor, again acting pro se, filed an
objection to the Final Application in which she requested more
time to review the itemizations.  Judge Hillman granted her
request and extended the objection deadline until August 1, 2008,
but the Debtor failed to file an objection on or before that
deadline.  On August 14, 2008, Judge Hillman held a hearing on
the Final Fee Application at which the Debtor noted her objection
on the record and requested additional time to prepare a forensic
accounting.  In support of her request, the Debtor submitted a
spreadsheet that she had prepared for the Court.  Judge Hillman
refused to consider it, declaring it "illegible," and, in the
absence of a "substantive objection," he approved the Final Fee
Application.

On August 20, 2008, Schultz filed a Request for Judgment
seeking entry of a final judgment with respect to the Final Fee
Application.  The Debtor, still acting pro se, responded by
filing an objection and motion to reconsider.  In the motion to
reconsider, the Debtor expressed general dissatisfaction with the
results achieved in the case, asserting that Schultz had failed
to resolve any of the estate's legal disputes and that she was
substantially more in debt at the end of the proceedings than at
the time she filed her bankruptcy petition in 2000.  She also

-8-

claimed that Schultz had double-billed for services, charged
excessive fees, fabricated charges and repeatedly lied to the
Court.  Specifically, the Debtor objected to Schultz's fees on
the grounds that they exceeded any potential recovery she could
have obtained had her claims been successfully litigated.  She
also alleged that Schultz made various misrepresentations to the
Court, including 1) that she signed the Affidavit in support of
the First Fee Application and 2) that she agreed to the described
settlements.

Finally, the Debtor asserted that Schultz had violated Fed.
R. Bankr. P. 2016(b) by failing to disclose 1) periodic increases
in his retainer or 2) that he had an interest adverse to the
estate by virtue of the mortgage he held on her parents' house to
secure payment of his fees.  The Debtor asserted that she had
consulted a forensic accounting firm and that they had discovered
several accounting anomalies, particularly with respect to
missing funds from the McMullen Claim Settlement.

The Bankruptcy Judge considered the Debtor's motion for
reconsideration in a Memorandum of Decision dated February 18,
2009.  See McMullen II, 2009 WL 53026 (Bankr. D. Mass. Feb 18,
2009).  Generally, he found that the Debtor was in a
substantially better position at the end of the case than she had
been at its outset based upon 1) the two cash settlements totally
$287,500 ($150,000 in the McMullen Claim Settlement and $137,500

-9-

in the Vlahos Settlement), 2) $20,000 in value from other various claims that were disallowed, 3) the discharge of the mortgage on the Investment Property and 4) the release of the deficiency judgment on the Single Family Home.  Bankruptcy Judge Hillman noted that the Debtor's confusion and frustration were understandable, however, given that the cash settlements, in light of Schultz's fees, did not fully reimburse her actual damages.  He concluded nonetheless that she had assumed the risk of not being made whole and that the three settlements, all of which had been reduced to final orders, could not be indirectly challenged in connection with an objection to Schultz's fees.

After a closer review of the fee applications, Judge Hillman determined that Schultz's fees were, for the most part, reasonable and necessary, especially in light of the "relative success" of the Debtor's case.  He found that some fees were not, however, reasonably incurred and reduced the Final Fee Award by $17,612 accordingly.  As in McMullen I, Judge Hillman made it clear that the fee awards were not final and were, again, subject to partial or complete disgorgement.

Bankruptcy Judge Hillman also recognized that Att'y Schultz had failed to supplement the Rule 2016(b) Statement as required by Fed. R. Bankr. 2016(b) to reflect the Amendment to the initial fee agreement and found it likely that Schultz periodically increased his retainer without disclosing the source of the

funds.[3]  He therefore ordered Schultz to file a supplemental Rule
2016(b) Statement before any fee award would become final.  Judge
Hillman nevertheless rejected the Debtor's allegations of the
impropriety of Schultz's acceptance of a mortgage on the
Russell's house in lieu of an increase in his retainer, reasoning
that Schultz had performed legal services for the Russells in
cases unrelated to the Debtor's bankruptcy and that the mortgage
secured a separate obligation for those unrelated legal fees.

    In February, 2009, Schultz filed the Supplemental Rule
2016(b) Statement along with a renewed Request for Judgment
seeking a final order with respect to his fees.  The Debtor, in
turn, (still acting pro se) opposed entry of such an order and
sought reconsideration of certain findings made in McMullen II,
reiterating many of her prior arguments concerning Schultz's
allegedly fraudulent acts and misrepresentations.  She also
objected to Schultz's statement, arguing that his failure to
supplement such a statement voluntarily was a wilful attempt to
deceive the Court and, thus, grounds for the complete
disgorgement of Schultz's fees.

    In a Memorandum dated May 27, 2009, Bankruptcy Judge Hillman
considered Schultz's renewed Request for Judgment along with the
Debtor's various objections.  See McMullen III, 2009 WL 1490581

---

    [3]  Fed R. Bankr. P. 2016(b) imposes a continuing obligation
on a debtor's attorney to file supplemental statements within 14
days after any payment or agreement not previously disclosed.

(Bankr. D. Mass. May 27, 2009).  He found that 1) Schultz's Rule 2016 disclosures were untimely and incomplete, 2) there had been at least five events during the pendency of the case warranting contemporaneous supplements to the Rule 2016(b) Statement and 3) Schultz had filed a supplement only after the Court ordered him to do so.

The Bankruptcy Court admonished Schultz for taking no action to clarify inconsistencies in the record arising from his incomplete disclosures and for causing the Court to expend substantial resources investigating matters that should have been disclosed long before.  Ultimately, however, Judge Hillman found that Schultz's omissions, though reprehensible, did not warrant complete disgorgement because "the fact that he must live with the errors he occasioned is an adequate sanction."

The Bankruptcy Judge also found that the Debtor's allegations of fraud on the part of Schultz had already been considered and ruled upon in McMullen II.  He characterized her allegations as "general", "inconsistent" and "vague" and concluded that she stated no grounds for reconsideration.

Finally, Judge Hillman found that the Debtor's allegation that funds were missing from the estate was "colorable" and ordered Schultz and the Trustee to show cause why the Court should not appoint an independent accountant to investigate the missing funds.  Shortly thereafter, the Trustee filed a response

explaining the inconsistencies in the accounting of the McMullen Claim Settlement.  Satisfied that the Cash Allowed Claim was fully accounted for, Judge Hillman entered a final order on June 8, 2009, approving Schultz's request for a total of $315,347 in attorneys' fees.  The instant appeal followed.

III. **Legal Analysis**

  A.  **Appeal of Bankruptcy Judge's Award of Attorneys' Fees**

    1.  **Standard of Review**

    28 U.S.C. § 158 vests in United States District Courts jurisdiction to hear appeals from interlocutory orders and decrees of bankruptcy judges.  In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo "[c]onclusions of law and legal significance accorded to facts". In Re Chestnut Hill Mortgage Corp., 158 B.R. 547, 549 (D. Mass. 1993).  The court must, however, accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous."  Id.

    A district court may disturb an award of attorney fees only for mistake of law or abuse of discretion.  See In Re Lopez, 405 B.R. 24, 30 (B.A.P. 1st Cir. 2009).  In reviewing fee awards, great deference is granted to the trial court judge, "whose intimate knowledge of the nuances of the underlying case uniquely positions him to construct a condign award."  Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292 (1st Cir. 2001).

Because the determination of a reasonable fee "necessarily involves a series of judgment calls," the trial court has "extremely broad" discretion in determining an award, and "an appellate court is far more likely to defer to the trial court in reviewing fee computations than in many other situations." Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992); see also Bogan v. City of Boston, 489 F.3d 417, 427 (1st Cir. 2007). Abuse of discretion is found to occur, however, when the trial court ignores a material factor deserving significant weight, relies upon an improper factor, or assesses all proper and no improper factors, but makes a serious mistake in weighing them. In Re Lopez, 405 B.R. at 30.

### 2. Application

Generally, a bankruptcy court may award an attorney "reasonable compensation for actual and necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). In determining the amount of reasonable compensation to be awarded, the court considers the nature, extent and value of the attorney's services, taking into account a variety of factors, including the time spent on such services, the rates charges and the cost of comparable services. 11 U.S.C. § 330(a)(3); In Re Smuggler's Beach Properties, Inc., 149 B.R. 740, 743 (Bankr. D. Mass. 1993).

-14-

In the First Circuit, courts employ the "lodestar" approach to evaluate the reasonableness of compensation for attorneys and other professionals.  See Furtado v. Bishop, 635 F.2d 915, 919-20 (1st Cir. 1980).  Under that approach, the fee-setting court first establishes a "threshold point of reference" or "lodestar," which is the number of hours reasonably spent by the attorney multiplied by his reasonable hourly rate.  See, e.g., Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).  The "lodestar" may then be adjusted up or down to reflect a variety of factors including,

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorneys' services; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

In Re Smuggler's Beach, 149 B.R. at 743.  If the time expended appears duplicative, excessive or otherwise unnecessary, the lodestar should be reduced accordingly.  See Grendel's Den, 776 F.2d at 950.

In the instant case, Bankruptcy Judge Hillman employed the lodestar approach to evaluate Schultz's Final Fee Application. He found that the hourly rates assigned to Schultz ($200-$285 per

-15-

hour) and his colleagues ($140-$175 per hour for attorneys and $75-$85 for paralegal staff) were reasonable and fell within the average range charged by Chapter 13 practitioners in the region. He also found that, in light of the highly contested nature of the proceedings, the complexity of the issues presented and the relative success achieved, the time spent was generally reasonable and necessary and yielded benefits to both the Debtor and her estate.

In total, Bankruptcy Judge Hillman awarded Schultz $315,347 in compensation for his representation of the Debtor throughout her various state court and federal bankruptcy proceedings.  Of that $315,347, Schultz must reimburse the Chapter 13 Trustee $5,472 pursuant to a stipulation, leaving Schultz with a total award of $309,875.  Given that the Debtor has already made payments totaling $206,040 pursuant to interim fee awards, she currently owes Att'y Schultz a balance of $103,835.

The Debtor contends that the Bankruptcy Judge erred in his lodestar analysis by failing to accord sufficient weight to 1) the amount at stake in the litigation as compared to the results obtained and 2) the size and value of her estate.  At the outset of the litigation, Att'y Schultz represented to the Debtor that she held two claims exceeding $350,000 each.  Given Schultz's representations, the Debtor was presumably expecting a substantial monetary judgment above any legal fees incurred or

funds necessary to discharge the mortgage on the Investment
Property and the deficiency on the Single Family Home.
Ultimately, however, the Vlahos Litigation settled for only
$137,500 and Schultz's fees and expenses with respect to the
matter totaled $133,530, almost the entire amount of the
settlement.  The McMullen/Perry Claim Litigation settled for
$150,000 (plus the Non-Cash Allowed Claim), with respect to which
Schultz charged over $200,000 in fees and expenses.  The Debtor
maintains that awarding Att'y Schultz fees equal to the amount
she recovered through her settlements is presumptively
unreasonable.

Given the settlement amounts, the Debtor's frustration is
understandable.  At least on its face, the Bankruptcy Judge's
award of over $300,000 in attorneys' fees appears grossly
disproportionate to the benefit Schultz obtained for the Debtor's
estate.  See In Re Smuggler's Beach, 149 B.R. at 743 (in
assessing the reasonableness of a debtor's attorneys' fees under
the lodestar method, the amount at stake and the results obtained
are of paramount importance).  As the Debtor maintains, the
degree to which a party succeeds is undoubtedly a "crucial
factor" in shaping a fee award and courts may reduce a requested
fee award if the judgment or settlement amount is small.  In Re
Lopez, 405 B.R. at 30-31.

The Debtor's contention that the Bankruptcy Judge accorded "little to no weight" to the size of her estate and the results Att'y Schultz obtained is not, however, entirely accurate. Bankruptcy Judge Hillman did, in fact, consider those factors but found that Schultz's efforts conferred a significant benefit on McMullen's estate.  Those benefits included two cash settlements totaling $287,500 ($150,000 in the McMullen Claim Settlement and $137,500 in the Vlahos Settlement), $20,000 in claims that were disallowed, ownership and control of the Investment property (and the income stream therefrom), the discharge of the mortgage on the Investment Property and the release of the deficiency judgment on the Single Family Home.

There is no indication in the record, however, that Att'y Schultz ever advised the Debtor during the course of the proceedings of the exorbitant attorneys' fees that would be incurred in connection with the recovery of those benefits for the Debtor's estate.  If, for example, he had produced correspondence warning her that she might incur fees that approached the amount of her recovery and she did not demur, then the ultimate award of fees would be more reasonable.  In the absence of such correspondence, however, the extent of the attorney's work product was unjustified.

The Debtor also faults the Bankruptcy Judge for failing to reduce materially the total fees awarded to Att'y Schultz in

light of his acknowledged improprieties.  Judge Hillman made a
number of minor reductions for services that he deemed
duplicative, excessive or otherwise unnecessary, but only reduced
the Final Fee Award by approximately 5%.[4]  Notably, Bankruptcy
Judge Hillman chose not to penalize Att'y Schultz for his
manifest failure to comply with the disclosures required by Fed.
R. Bankr. P. 2016, despite his conclusion that the attorney's
omissions were "not inconsiderable."  Indeed, in McMullen III,
Judge Hillman expended a significant portion of his opinion
stressing the importance of Bankruptcy Rule 2016 and criticizing
Att'y Schultz for his repeated violations of that rule.  Yet
despite the harsh reprimand, the judge opted not to reduce the
award of attorneys' fees to reflect his misconduct because "the
fact that [Schultz] must live with the errors he occasioned is an
adequate sanction."

Although this Court does not second guess the Bankruptcy
Judge's findings of fact, it disagrees with the conclusions drawn
from those findings which were inconsistent and unsustainable.
Specifically, the findings of the Bankruptcy Judge that 1) Att'y
Schultz's omissions were significant, 2) he took no action to
clarify inconsistencies in the record and 3) he caused the Court

---

[4] For a detailed itemization of Judge Hillman's reductions,
see McMullen II, 2009 WL 53026, at *30-34.

to waste substantial time and resources, were insufficiently accounted for in the Judge's ultimate award of attorneys' fees.

As Judge Hillman himself recognized, the First Circuit has made it clear that "full and timely disclosure of the details" of a fee arrangement is mandatory. In Re Martin, 817 F.2d 175, 182 (1st Cir. 1987). "Coy or insufficient disclosures which leave the court to ferret out pertinent information from other sources are not sufficient." In Re Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991). Failure to comply with Bankruptcy Rule 2016 can provide grounds for disqualification of debtor's counsel, disallowance of fees in whole or in part and disgorgement of fees. In Re Martin, 817 F.2d at 182-83. In sum, an attorney who neglects to file the appropriate disclosures performs services at his peril: anything less than full disclosure leaves counsel at risk that compensation may be denied. In Re Whitman, 51 B.R. 502, 507 (Bankr. D. Mass. 1985); In Re Saturley, 131 B.R. at 509.

Bankruptcy Judge Hillman determined that Att'y Schultz's Rule 2016(b) disclosures were "neither timely nor complete" and fell "far below the appropriate standard." His fee applications did not disclose all the information required by 11 U.S.C. § 329(a), such as the source of the retainer payments, and he filed the required Rule 2016(b) Supplement only after ordered to do so by the judge. Att'y Schultz's omissions caused the

-20-

Bankruptcy Court to expend "substantial resources" investigating matters which should have been decided much earlier and led to "an unreasonable delay in a case whose completion [was] already overdue."  More importantly, the failure of the attorney to comply with Bankruptcy Rule 2016 resulted in confusion and prejudice to the Debtor who reasonably claims that she was misled about the details of the fee arrangement.

Consequently, the Court will reduce the award of attorneys' fees to Att'y Schultz by approximately one-fifth of the amount sought or $60,000 to be exact.

**B.    Appellee's Motion for Attorneys' Fees and Costs Associated with Appeal (Docket No. 8)**

Attorney Schultz has moved the Court, in a separate motion, to find that Ms. McMullen's appeal is frivolous and to award him $11,118 in attorneys' fees and $42 in costs accumulated in connection with the instant appeal.

For reasons that are obvious from this Court's extensive consideration of the Debtor's appeal from the award of attorneys' fees, this Court concludes that the appeal was not frivolous nor brought in bad faith and, therefore, Appellee's motion will be denied.  See In re Maloni, 282 B.R. 727, 734 (1st Cir. B.A.P. 2002).

**ORDER**

In accordance with the foregoing,

1)   The Bankruptcy Court's award of attorneys' fees is
     **AFFIRMED**, in part, and **REVERSED**, in part, in that the
     award of attorneys' fees to Att'y Schultz is reduced by
     $60,000 from $315,347 to $255,347 (before reimbursement
     of the Chapter 13 Trustee); and

2)   Appellee's Motion for Attorneys' Fees and Costs (Docket
     No. 8) is **DENIED**.


**So ordered.**

                               /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge

Dated March 30, 2010