United States District Court
District of Massachusetts

```
_____
                               )
JUDITH McMULLEN                )
       Appellant,              )
                               )
       v.                      )    Bankruptcy Appeal No.
                               )    09-11205-NMG
GORDON N. SCHULTZ,             )
       Appellee.               )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves an appeal of an award of attorney fees issued by a bankruptcy court. The appellee, Gordon N. Schultz, is an attorney who appears pro se.

I.  **Factual Background**

The Debtor/Appellant, Judith McMullen ("McMullen" or "the Debtor"), is a licensed real estate broker. She filed a voluntary Chapter 7 bankruptcy petition in January, 2000 and the case was assigned to United States Bankruptcy Judge William C. Hillman of this district. At the time the Debtor initiated the proceedings, she owned a fully-rented, two-family residence as an investment property ("the Investment Property") and a single-family residence, both in New Bedford, Massachusetts. The Debtor's mortgages on both of the properties were in default, the Investment Property was in foreclosure and the single family residence had already been foreclosed upon. There were also

legal issues concerning the propriety of the default and the deficiency judgment being pursued in conjunction with the foreclosure of the single family residence.

In April, 2000, the Debtor retained Attorney Gordon Schultz ("Att'y Schultz") to convert her case from a Chapter 7 to a Chapter 13 proceeding. According to the Statement filed by Att'y Schultz in April, 2000, pursuant to Bankruptcy Rule 2016(b) ("the Rule 2016(b) Statement"), the Debtor's parents, Addison and Louise Russell (collectively, "the Russells"), agreed to pay Att'y Schultz's fees and costs on the Debtor's behalf.

Due to the Debtor's involvement in numerous real estate transactions, the claims resolution process was long and convoluted. The most contentious portion of the litigation involved a series of claims and counterclaims arising from the Debtor's purchase and financing of the two properties in New Bedford from Curtis Perry, then a Chapter 7 Debtor himself, and his associates Isabel Perry, the trustee of Casa Sol Trust, the Perry family's trust, and Curtis Mello ("Mello") ("the McMullen/Perry Claim Litigation").

In 2001, the Debtor and Deborah Casey, the Chapter 7 Trustee of Curtis Perry's estate, entered into a settlement agreement ("the McMullen Claim Settlement") resolving the Debtor's claim against Curtis Perry's estate and the Chapter 7 Trustee's claim against the Debtor's estate. Pursuant to a settlement between

Curtis Perry and the Chapter 7 Trustee in April, 2003, the Debtor was required to pursue the McMullen/Perry Claim Litigation against Casa Sol Trust and Mello.  In August, 2008, the remaining parties entered into a formal settlement ("the Perry/Mello Settlement").  Although McMullen was involved in several other relevant actions, the only other recovery she received was as a result of a settlement in a state court action against John Vlahos for unpaid real estate commissions ("the Vlahos Settlement").

## II. Procedural History

Att'y Schultz's first fee application ("the First Fee Application") was filed in June, 2003, and sought $131,080 in fees and $3,450 for expenses incurred up to that date.  Rather than seeking compensation from the Russells (as stipulated in the Rule 2016(b) Statement), Att'y Schultz requested that his fees be paid from the $150,000 cash allowance which his client had received as part of the McMullen Claim Settlement.  In July, 2003, both the Chapter 7 Trustee and Isabel Perry filed objections to the First Fee Application.  In October of that year, the Trustee and Att'y Schultz filed a stipulation providing that Att'y Schultz would credit approximately $5,500 against the fee portion of the First Fee Application in consideration for the Trustee's withdrawal of her objection.

Thereafter, on March 4, 2004, the Debtor, acting pro se, filed with the Court a lengthy letter requesting an investigation of the case in light of the substantial fees sought by Att'y Schultz and what she considered to be the "underwhelming" results achieved up to that point.  She also noted that her father had granted a mortgage on his home to Att'y Schultz when he demanded an $80,000 increase in his retainer and claimed that she signed the Affidavit (in support of the fee application) under the misconception that Att'y Schultz would release her parents from their obligation to pay his fees.  Att'y Schultz allegedly refused to do so.  Finally, the Debtor alleged that Att'y Schultz had forced her to agree to the McMullen Claim Settlement (under which she became entitled to only a small portion of the asserted claim) by threatening to withdraw his representation if she did not accept the terms of the settlement.

Shortly thereafter, Att'y Schultz filed a second fee application ("the Second Fee Application") requesting $131,040 in compensation for services rendered in the Vlahos Litigation and reimbursement of $2,490 for expenses.  Isabel Perry objected to that application as well, questioning the reasonableness of the fees (which amounted to 97% of the recovery the Debtor had obtained in the Vlahos Settlement).

In August, 2004, Bankruptcy Judge Hillman issued a Memorandum of Decision in which he considered both the First and

Second Fee Applications.  In re McMullen, No. 00-10151-WCH (Bankr. D. Mass. Aug. 19, 2004) ("McMullen I").  In that decision, Bankruptcy Judge Hillman concluded that the Amendment and Affidavit effectively amended the Rule 2016(b) Statement, although he noted his apprehension about the Amendment's effect on the Russells' obligation to pay Att'y Schultz's fees and expenses.  He also opined that the record did not reflect that the services rendered had ultimately benefitted the estate but simultaneously awarded the Second Fee Application in full ($133,530) and $75,000 in compensation for the First Fee Application (approximately 55% of the fees originally requested).  Despite Bankruptcy Judge Hillman's concern about the effect of the Amendment, Att'y Schultz took no action to correct the record or otherwise clarify his prior disclosures.

The issue of Att'y Schultz's fees was not revisited again until July, 2008, when he filed his Final Fee Application.  By that time, the relationship between attorney and client had become acrimonious due, in large part, to the interim fees awarded in McMullen I.  In the Final Fee Application, Att'y Schultz requested $116,586 in compensation and reimbursement of expenses in the amount of $10,125, in addition to the fees and expenses from the First Fee Application which were not previously awarded in McMullen I.

On August 14, 2008, Bankruptcy Judge Hillman held a hearing on the Final Fee Application at which the Debtor noted her objection on the record and requested additional time to prepare a forensic accounting. In the absence of a "substantive objection," however, Bankruptcy Judge Hillman approved the Final Fee Application. On August 20, 2008, Att'y Schultz sought entry of a final judgment with respect to the Final Fee Application. The Debtor, still acting pro se, responded by filing an objection and motion to reconsider, expressing general dissatisfaction with the results achieved in the case. She also claimed that Att'y Schultz had double-billed for services, charged excessive fees, fabricated charges and repeatedly lied to the Court. Specifically, McMullen objected to Att'y Schultz's fees on the grounds that they exceeded any potential recovery she could have obtained had her claims been successfully litigated. She also alleged that Att'y Schultz made various misrepresentations to the Court, including that she 1) signed the Affidavit in support of the First Fee Application and 2) agreed to the described settlements.

Finally, the Debtor asserted that Att'y Schultz had violated Fed. R. Bankr. P. 2016(b) by failing to disclose 1) periodic increases in his retainer or 2) that he had an interest adverse to the estate by virtue of the mortgage he held on her parents' house to secure payment of his fees. The Debtor asserted that

-6-

she had consulted a forensic accounting firm and that they had discovered several accounting anomalies, particularly with respect to missing funds from the McMullen Claim Settlement.

In a Memorandum of Decision dated February 18, 2009, the Bankruptcy Judge found that the Debtor was in a substantially better position at the end of the case than she had been at its outset based upon 1) the two cash settlements totaling $287,500 ($150,000 in the McMullen Claim Settlement and $137,500 in the Vlahos Settlement), 2) $20,000 in value from other various claims that were disallowed, 3) the discharge of the mortgage on the Investment Property and 4) the release of the deficiency judgment on the single family residence. In re McMullen, 2009 WL 530296 (Bankr. D. Mass. Feb 18, 2009) ("McMullen II"). Bankruptcy Judge Hillman noted that the Debtor's confusion and frustration were understandable, however, given that the cash settlements, in light of Att'y Schultz's fees, did not fully reimburse her actual damages. He concluded, nonetheless, that she had assumed the risk of not being made whole and that the three settlements, all of which had been reduced to final orders, could not be indirectly challenged through an objection to Att'y Schultz's fees.

After a closer review of the fee applications, Bankruptcy Judge Hillman determined that Att'y Schultz's fees were, for the most part, reasonable and necessary, especially in light of the

"relative success" of the Debtor's case. He found that some fees were not, however, reasonably incurred and reduced the Final Fee Award by a modest $17,612. As in McMullen I, Bankruptcy Judge Hillman made it clear that the fee awards were not final and were, again, subject to partial or complete disgorgement.

Bankruptcy Judge Hillman also recognized that Att'y Schultz had failed to supplement the Rule 2016(b) Statement as required by that rule to reflect the Amendment to the initial fee agreement and found it likely that Att'y Schultz had periodically increased his retainer without disclosing the source of the funds. He therefore ordered Att'y Schultz to file a supplemental Rule 2016(b) Statement before any fee award would become final. Bankruptcy Judge Hillman nevertheless rejected the Debtor's allegations that Att'y Schultz had acted improperly in accepting a mortgage on the Russell's house in lieu of an increase in his retainer. The judge reasoned that Att'y Schultz had performed legal services for the Russells in cases unrelated to the Debtor's bankruptcy and that the mortgage secured a separate obligation for those unrelated legal fees.

In February, 2009, Att'y Schultz filed the Supplemental Rule 2016(b) Statement along with a renewed Request for Judgment seeking a final order with respect to his fees. The Debtor, in turn, continuing to act pro se, opposed entry of such an order and sought reconsideration of certain findings made in McMullen

II. She reiterated many of her prior arguments concerning Att'y Schultz's allegedly fraudulent acts and misrepresentations.

On May 27, 2009, Bankruptcy Judge Hillman held that 1) Att'y Schultz's Rule 2016 disclosures were untimely and incomplete, 2) there had been at least five events during the pendency of the case warranting contemporaneous supplements to the Rule 2016(b) Statement and 3) Att'y Schultz had filed a supplement only after the Court ordered him to do so. In re McMullen, No. 00-10151-WCH, 2009 WL 1490581 (Bankr. D. Mass. May 27, 2009) ("McMullen III").

The Bankruptcy Judge admonished Att'y Schultz for taking no action to clarify inconsistencies in the record arising from his incomplete disclosures and for causing the Court to expend substantial resources investigating matters that should have been disclosed long before. Ultimately, however, Bankruptcy Judge Hillman found that Att'y Schultz's omissions, though "far below the appropriate standard", did not warrant complete disgorgement because "the fact that he must live with the errors he occasioned is an adequate sanction." Id. at *16. The Bankruptcy Judge also found that the Debtor's allegations of fraud on the part of Att'y Schultz had already been considered and ruled upon in McMullen II. He characterized her allegations as "general . . . vague . . . [and] inconsistent" and concluded that she stated no grounds for reconsideration. Id. at *19.

Finally, Bankruptcy Judge Hillman found that the Debtor's allegation that funds were missing from the estate was "colorable" and ordered Att'y Schultz and the Trustee to show cause why the Court should not appoint an independent accountant to investigate the missing funds. Shortly thereafter, the Trustee filed a response explaining the inconsistencies in the accounting of the McMullen Claim Settlement. Satisfied that the funds were fully accounted for, Bankruptcy Judge Hillman entered a final order on June 8, 2009, approving Att'y Schultz's request for a total of $315,347 in attorneys' fees. The instant appeal followed.

On March 30, 2010, this Court affirmed the Bankruptcy Court's general award of attorneys' fees but reduced that award by $60,000 to $255,347 (before reimbursement of the Chapter 13 Trustee) in order to sanction Att'y Schultz for his multiple failures to comply with Fed. R. Bankr. P. 2016. McMullen v. Schultz, 428 B.R. 4, 13 (D. Mass. 2010) ("McMullen Appeal"). The Court also denied Att'y Schultz's motion for attorney's fees and costs incurred as a result of the appeal, finding that the appeal was not frivolous.

On April 13, 2010, Att'y Schultz submitted a motion for rehearing pursuant to Fed. R. Bankr. P. 8015, asking the Court 1) to reconsider its decision to reduce his requested and approved fees by $60,000 and 2) to conclude that a reduction less

than $60,000 is appropriate. He also moves to supplement the appellate record with 1) his affidavit and 2) 12 attached exhibits. The motion has not been opposed.

III. **Motion for Rehearing**

    A. **Legal Standard**

Pursuant to Fed. R. Bankr. P. 8015, a party has a right to file a motion for rehearing. The rule does not provide a standard for analyzing such a motion. The Ninth Circuit Court of Appeals upheld a District Court's application of the standard for motions pursuant to Fed. R. App. P. 40(a)(2) because Rule 8015 was derived from that rule. In re Fowler, 394 F.3d 1208, 1214-15 (9th Cir. 2005). The Rule 40(a)(2) standard "requires that a motion for rehearing state with particularity each point of law or fact that the movant believes the court has overlooked or misapprehended." Id. at 1215. If the Court finds that it has not considered an important aspect of the case, then a rehearing is warranted. See id.

    B. **Application**

Att'y Schultz takes issue with the Court's statement in its March, 2010 Memorandum and Order that:

> There is no indication in the record, however, that Att'y Schultz ever advised the Debtor during the course of the proceedings of the exorbitant attorneys' fees that would be incurred in connection with the recovery of those benefits for the Debtor's estate. If, for example, he had produced correspondence warning her that she might incur fees that approached the amount of her recovery and

-11-

> she did not demur, then the ultimate award of fees would be more reasonable. In the absence of such correspondence, however, the extent of the attorney's work product was unjustified.

McMullen Appeal, 428 B.R. at 12. Att'y Schultz also contests the Court's statements that

> Att'y Schultz represented to the Debtor that she held two claims exceeding $350,000 each [and that] . . . the failure of the attorney to comply with Bankruptcy Rule 2016 resulted in confusion and prejudice to the Debtor who reasonably claims that she was misled about the details of the fee arrangement.

Id. at 12-13. Finally, Att'y Schultz points out that he sought to suspend his representation of McMullen in 2007 and 2008 and Bankruptcy Judge Hillman refused both requests. Despite an increasingly acrimonious relationship with McMullen, Att'y Schultz continued to represent her.

Accompanying Att'y Schultz's motions is correspondence between him and his client which he maintains demonstrates that he repeatedly informed McMullen about 1) the cost of proceeding with her claims, 2) which facts could and could not be proven, 3) what could and could not be achieved and 4) the advisability of settlement on certain issues. Att'y Schultz asserts that the correspondence also indicates that McMullen was insistent that Att'y Schultz not settle, continue vigorously to defend her claims and assert counterclaims even though he repeatedly warned her that she was unlikely to prevail at trial. Finally, Att'y Schultz maintains that McMullen's July 9, 2003 Affidavit in

-12-

support of his First Fee Application demonstrates that McMullen fully understood the fee arrangement.

Thus, Att'y Schultz argues that a $60,000 reduction in his fees is an excessive sanction for his failure to comply with Rule 2016. He asks the Court to affirm Bankruptcy Judge Hillman's decision that a public reprimand and discharge of the parents' mortgage as security for McMullen's remaining fee obligations were sufficient sanctions. He asserts that he has been embarrassed by Bankruptcy Judge Hillman's rulings and "vilified" by McMullen's accusations of fraud and incompetence. He maintains that this Court's $60,000 reduction of his fee is unwarranted because his failure to comply with Rule 2016 was not the result of "overreaching or intentional concealment".

Att'y Schultz contends that he did not provide the Court with the explanatory correspondence in the original appeal because Bankruptcy Judge Hillman did not suggest that McMullen was unaware of the legal work that was being performed or that, had she known, she would have either terminated the litigation or settled her claims. He argues that, because those issues were raised by this Court sua sponte, due process requires that he have an opportunity to respond.

After reviewing the correspondence that Att'y Schultz has provided, the Court finds that it has not previously considered an important aspect of the case and, therefore, reconsideration

-13-

is warranted.  Consequently, the Court will allow Att'y Schultz's motions for reconsideration and to supplement the appellate record.

Upon reconsideration of the appellate record, including the previously unseen correspondence, the Court concludes that there is ample evidence that Att'y Schultz advised McMullen of the attorney's fees that would be incurred and that such fees would consume most or all of her recovery.  For example, in letters to McMullen dated December 30, 2004, January 17, February 2, and November 4, 2005, Att'y Schultz repeatedly and clearly stated that settlement was advisable because McMullen had yet to produce any evidence of the financial damages that she claimed to have suffered due to the conduct of Isabel and Mello in excess of the $150,000 which she had already recovered.  In his February 2, 2005 letter, Att'y Schultz wrote:

> without that evidence of damages, there will be little, if any, likelihood of prevailing at trial; and you unquestionably will have incurred more fees to me as well as the possible anger of the Court in pursuing a claim with no proof[.]

Despite all of the forewarning, McMullen insisted on pursuing her claims to trial.

Later, in a fax sent to McMullen on August 22, 2007, Att'y Schultz discussed their trial strategy and suggested that a Fed. R. Bankr. P. 9011 motion for attorney's fees against Isabel Perry might lead Isabel to withdraw her claims, thus ending the

litigation without incurring further legal fees.  In her response, dated September 4, 2007, McMullen reiterated her desire to proceed to trial for damages and attorney's fees on her claims against Isabel Perry and Curtis Mello.  Att'y Schultz maintains that he continually informed her that she was being unrealistic.  Unfortunately, her intransigence forced Att'y Schultz unilaterally to file a Motion for Authority to Compromise Controversy which McMullen opposed.

Upon reconsideration of the appellate record and the supplemental evidence, the Court finds that McMullen was aware of:  1) the risks of pursuing her claims and of incurring substantial additional fees, 2) the fee arrangement despite Att'y Schultz's failure to comply with Rule 2016 on five occasions, 3) the difficulty of pursuing claims without adequate proof of damages and 4) the fact that Att'y Schultz was compelled to continue to represent her after their relationship had eroded.  In light of those considerations, the Court concludes that a fee reduction of $30,000 is more appropriate than $60,000.  Such a reduction provides a reasonable sanction for Att'y Schultz's failure to comply with Rule 2016 but takes into account the hardship that he encountered in representing the Debtor.

**ORDER**

In accordance with the foregoing,

1) the Appellee's motions for rehearing (Docket No. 15) and to supplement the appellate record (Docket No. 16) are **ALLOWED;** and

2) the fee award is reduced by $30,000 to a total of $285,347.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 6, 2011